# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Kevin Keith, | : | Case No. 08-3908 |
| Petitioner, | : | |
| -vs- | : | |
| David Bobby, Warden, Ohio State Penitentiary, Respondent. | : | **This is a death penalty case.** |

_____

**Motion Under 28 U.S.C. § 2244 for Order Authorizing District Court to Consider Second or Successive Application for Relief Under 28 U.S.C. § 2254**

_____

Kevin Keith moves this Court for an order authorizing the district court to consider his successor habeas petition. The basis for Kevin Keith's application is his newly discovered exculpatory evidence, suppressed by the State in violation of Brady v. Maryland. The arguments supporting this motion are more fully laid out in the supporting memorandum.

                                                  Respectfully submitted,

                                                  OFFICE OF THE
                                                  OHIO PUBLIC DEFENDER

                                                  /s/ Rachel Troutman
                                                  Rachel Troutman – 0076741
                                                  Assistant State Public Defender

                    /s/ Tyson Fleming  
                    Tyson Fleming – 0073135  
                    Assistant State Public Defender  

                    8 East Long Street, 11th Floor  
                    Columbus, Ohio  43215  
                    (614) 466-5394  
                    Fax:  (614) 644-0708  
                    **COUNSEL FOR PETITIONER**

**Memorandum in Support**

Kevin Keith recently discovered evidence that exculpates him and exposes the lengths to which certain police officers went to "solve" the Bucyrus Estates murders. Keith was convicted of those murders, and the strongest evidence against him consisted of eyewitness identification and motive. But the State suppressed evidence that shows that a man named Rodney Melton was responsible for the murders, and that, despite the testimony by State's witnesses, the surviving adult victim never gave the name "Kevin" before the police influenced him.

**A.    Standard for authorizing second or successive application**

According to 28 U.S.C. § 2244(b)(3)(C), this Court can authorize Keith's filing of a second or successive application if it determines that his application makes a prima facie showing that the application satisfies the requirements of the subsection. "'Prima facie' in this context means simply sufficient allegations of fact together with some documentation that would 'warrant a fuller exploration in the district court.'" In re McDonald, 514 F.3d 539, 544 (6th Cir. 2008) (internal citations omitted). Keith easily satisfies this requirement.

"Such a prima facie showing…is not a difficult standard to meet." Id. at 544 (internal citations omitted). This Court "simply must determine whether there are sufficient allegations together with some documentation so as to require a district court to engage in additional analysis in order to ascertain whether but for the

constitutional error, no reasonable factfinder would have found [Keith] guilty of the underlying offense." Id. at 547.

**B.    Keith has not presented this claim in a prior application. 28 U.S.C. § 2244(b)(1).**

In compliance with 28 U.S.C. § 2244(b)(1), Keith's claims have not been presented in a prior application. See 28 U.S.C. § 2244(b)(1) ("A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed"). Former counsel for Keith filed his petition for habeas corpus relief on September 3, 1999. Keith only recently discovered the exculpatory evidence, so he could not have raised his claims for relief in his earlier petition.

**C.    The factual predicate for Keith's claim could not have been discovered previously through the exercise of due diligence. 28 U.S.C. § 2244(b)(2)(B)(i).**

In July 2007, Keith uncovered the majority of the exculpatory evidence in an unrelated case file that belonged to an uninterested party. Keith's counsel found another man's incriminating statements in the files of William Padgett, an investigator for the Ohio State Board of Pharmacy. The exculpatory information contained in the files had never been disclosed to Keith or his defense counsel.

While familiarizing themselves with Keith's case, undersigned counsel reviewed archived newspaper articles regarding trial witnesses Rodney and Bruce Melton. There were several indicators during Keith's trial that the Meltons were

the ones who were actually responsible for the murders.[1]  The news articles detailed the Meltons' elaborate ring of pharmacy burglaries, and that ring was in full swing at the time of the Bucyrus Estates murders.

Several of the same police officers were involved in both the investigations. In fact, Lieutenant David Dayne and Detective Jerry Hickman – both heavily involved in the pharmacy ring investigation – were the ones who brought Keith's name up at the Bucyrus Estates murder scene. T.p. 741-42.  Lieutenant Dayne testified against Keith at his trial. Id. at 588.

Pharmacy Board Investigator William Padgett was the person who tied together the various pharmacy burglaries across the state.  While Padgett had personal knowledge of the Meltons, he had had no involvement in the case against Keith, and thus no personal interest in maintaining Keith's conviction.  Since the pharmacy burglary investigation lasted from August 1993 to March 1994 –

---

[1] Defense counsel had been contacted by a relative of Rodney Melton, who told him that Rodney "is in on the killings." T.p. 699. Also, Sherriff Ronny Shawber testified that Melton showed up at the crime scene and knew the type of bullets involved in the killings. Id. at 670. Rodney also made sure to affirmatively tell Sheriff Shawber that his car – a car that matched the physical description given by witness Nancy Smathers – was broken down that night. Id. at 671. Furthermore, when Quanita Reeves said she was shot by her "daddy's friend, Bruce," she may have gotten the brothers' names mixed up. Id. at 715. Both Bruce and Rodney Melton were friends with her father, but Bruce is smaller than the description of the shooter.

encompassing the time of the murders for which Keith is convicted – counsel made a public records request to the Pharmacy Board. Exh. 8.

It was in those documents that counsel discovered that, on January 31, 1994, Rodney Melton told a confidential informant[2] "that he had been paid $15,000 to cripple 'the man' who was responsible for the raids in Crestline, Ohio last week." Exh. 4, p. 11. That conversation took place just two weeks before Rudel Chatman's family members were shot and killed. As the State pointed out at Keith's trial, Rudel Chatman was the man responsible for the Crestline drug raids on January 21, 1994. T.p. 590. This was the State's theory for the motive behind the shooting rampage at Bucyrus Estates on February 13, 1994. See id. at 830 ("The purpose of his murderous intentions was revenge for the activities of Rudel Chatman which resulted in the State of Ohio securing trafficking indictments against himself and other members of his family and friends.")

There were several other documents in the Pharmacy Board files that implicated Rodney Melton. For example, it was Melton's habit to wear a mask like the one worn by the Bucyrus Estates shooter. See exh. 6, pp. 7, 8. Compare t.p. 348, 716. Also, after Keith was arrested for the Bucyrus Estates murders, Melton's accomplice in the pharmacy burglary ring told the police that Rodney Melton was paid to kill Rudel Chatman. Exh. 7, p. 16. Both Lieutenant Dayne and

---

[2] This informant was eventually identified as Lynn McKee, though she later became Lynn Hickman when she married Galion detective Jerry Hickman.

6

Detective Hickman were part of this interview, but still Keith was never told about it.

Since this newly discovered evidence about Rodney Melton did not fit with the testimony of Richard Warren, counsel looked further into Warren's identification of Keith. Counsel then located the remainder of the Brady/Napue evidence.

Warren had identified Keith as the gunman. Warren was one of three survivors, but he was the only one who identified Keith. Since Warren had initially told at least four different witnesses – including a police officer – that he did not know who shot him, his testimony was less than reliable. See t.p. 240, 305, 620, 623.

Warren had also picked Keith out of a photo line-up. But he had also told witnesses that the shooter was wearing a mask. Id. at 285. See also id. at 243. Adding to the unreliability of Warren's testimony, 7-year-old surviving victim Quanita Reeves told the police that she was shot by her "daddy's friend, Bruce," and she excluded the picture of Keith as the man she knew as Bruce. It was the same photo line-up that the police had shown to Warren.

For these reasons, defense counsel challenged Warren's identification of Keith. Warren had not recalled the name "Kevin" until after he had met with police officers. Thus, counsel argued that he was improperly influenced.

To rebut this, Captain John Stanley testified. Stanley had been a police officer with the Bucyrus Police Department for 27 years, and he testified about the phone call he received from Warren's nurse. Stanley testified both during the suppression hearing and the trial that Warren independently provided the name "Kevin" to his nurse "Amy Gimmets." T.p. 226-27. See also id. at 223, id. at 771. Stanley claimed that Nurse Gimmets then immediately called him and told him about Warren's recollection of the name "Kevin."

Captain Stanley had testified under oath that Amy Gimmets was the nurse who gave him the name Kevin. But his report said the nurse who called him was "Amy Wishman." Exh. 10, p. 14. Undersigned counsel located registered nurse Amy Whisman (now Amy Petryk), and while she recalled calling Captain Stanley after Warren could speak, she said that she did not give him a name for Warren's shooter. Exh. 3. Petryk knew this because she had never gotten the shooter's name from Warren. Id.

By providing the defense with the wrong name, the State suppressed the true identity of the nurse who called Stanley. Defense counsel should not have to suspect that the State would provide them with an incorrect name.

Nor did defense counsel have any reason to believe that Captain Stanley would testify falsely about his conversation with Warren's nurse. "Ordinarily, we presume that public officials have properly discharged their official duties." Bracy

8

v. Gramley, 520 U.S. 899, 909 (1997) (internal citations omitted.) A veteran police officer perjured himself, and Keith cannot be faulted for failing to uncover the State's lies earlier.

Richard Warren did not even have a nurse named "Amy Gimmets." See exh. 1.[3] In fact, according to the Human Resources Department at Ohio Health, no person named "Amy Gimmets" has ever been employed at Grant Medical Center. Exh. 2.

"A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." Banks v. Dretke, 540 U.S. 668, 696 (2004). Defense counsel cannot be required to "scavenge for hints of undisclosed Brady material…." Id. at 695. Thus, in accordance with 28 U.S.C. § 2244 (b)(2)(B)(i), the factual predicate for this claim could not have been discovered previously through the exercise of due diligence.

Former habeas counsel requested discovery with regard to "the nurse who apparently confirmed Warren's identification." Dkt. 38. But the district court denied that request, finding that Keith failed to show good cause.

**D. The facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable**

---

[3] Exhibit 1 is Richard Warren's medical records. Counsel is filing them under seal to protect the victim's privacy rights and prevent them from going on this Court's website. Counsel has provided the Warden with a copy.

**factfinder would have found Keith guilty of the underlying offense. 28 U.S.C. § 2244 (b)(2)(B)(ii).**

The only real evidence against Keith consists of eyewitness identification and motive. Keith's newly discovered evidence addresses both of these aspects. Rodney Melton told others of his plan for revenge against Rudel Chatman. And Richard Warren never independently identified Keith.

Keith is legally and factually innocent. Since Keith's arguments are very factually-based, and this Court is without the transcript, Keith has included this chart to clarify the evidence against him and the impact of the newly discovered evidence.

| **Evidence against Keith:** | **Newly discovered evidence:** |
|---|---|
| Richard Warren's identification of "Kevin" as the person who shot him. | Captain Stanley admitted to providing Warren with the name Kevin, but he claimed that he only mentioned the name after the nurse "Amy Gimmets" gave it to him. T.p. 223-24, 226. Amy Petryk's affidavit contradicts this and erodes the reliability of Warren's identification testimony. See Exh. 3, exh. 2 (Stamm's affidavit that no Amy Gimmets ever worked for Grant Hospital).<br><br>*Also, though they are not newly discovered, Warren's medical records are evidence that the police influenced Warren with their own theory of the case. During a psychiatric counseling session on Feb. 21, 1994, Warren told his counselor that "law enforcement theorized that the shooting may have |

| | |
|---|---|
| | been drug related involving Marcel's [sic] brother." Exh. 1, p. 68. This contradicts the idea that it was Warren's independent memory that it was "Kevin" who was "involved in a big drug bust," who told Marichell this was because her "brother started ratting on people." T.p. 338, 343. |
| Nancy Smathers initially described the car she saw get stuck in the snow as a "real light" colored car. Exh. 12.<br>At trial, she confirmed that, "I know it was a white, cream, light yellow." T.p. 389.<br><br>Smathers described the man she saw as around 6' and "on the husky size build." Attachment A, Smathers' statement. | Rodney Melton's 1979 Chevy Impala had a "new yellow paint job" in January 1994, and Melton apparently would insist on using his car for his criminal activities. Exh. 4, p. 11.<br>Another time, the police informant described Rodney Melton's car as "cream to yellow." Exh. 6 (informant interview), p. 7.<br>(The car the State claimed was Keith's getaway car was described as green or gray, but never as yellow, cream, or light-colored. T.p. 448, 509.)<br><br>Around the time of the crime, Rodney Melton was 6'2" and 214 lbs. See exh. 11. The pharmacy ring informant described Melton as having broad shoulders. Exh. 6, p. 7.[4]<br>Also, compare the pharmacy ring informant's description of Melton's clothing on exh. 6, p. 8 (ski mask, all dark clothing), with descriptions of the shooter by Jesse Delaney and Jannette Bush on exh. 10, p. 1 ("was wearing all black clothing and had some type of ski hat or mask on"). |
| Keith's connection to the murder victim's brother, Rudel Chatman. | Rodney Melton had the same connection to the murder victim's brother, plus a stated intent to kill him. Exh. 4, p. 11 , exh. 7, p.16. |
| Alton Davison's Oldsmobile | There is nothing showing whether Melton's tires |

---

[4] Padded and layered clothing could be the reason for any additional discrepancy between the described size of the shooter and Melton's weight. Witness Barbara Ullom told police that the shooter was wearing clothing that appeared to be "insulated or the person was wearing something underneath them." Exh. 10, p. 55.

11

| | |
|---|---|
| Omega was supposed to have tires that were "similar in tread design" to the tire imprint left in the snow. Yezzo Deposition, p. 14. See also id at 23-25. | were ever analyzed to determine whether they were also "similar in tread design" to the imprint left in the snow. |

        Respectfully submitted,

        OFFICE OF THE
        OHIO PUBLIC DEFENDER

        s/ Rachel Troutman
        Rachel Troutman – 0076741
        Assistant State Public Defender

        s/ Tyson Fleming
        Tyson Fleming – 0073135
        Assistant State Public Defender

        8 East Long Street, 11th Floor
        Columbus, Ohio  43215
        (614) 466-5394
        Fax:  (614) 644-0708
        COUNSEL FOR PETITIONER

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2008, I electronically filed the foregoing Habeas Petition with the Clerk of Court using the CM/ECF system, and I mailed a copy to the office of Daniel Ranke, Assistant Attorney General, 615 W. Superior Ave. 11th Floor, Cleveland, Ohio 44113.

s/ Rachel Troutman
Rachel Troutman – 0076741
Counsel for Petitioner
